# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Nelly Gabueva,<br>aka Nelly Allen, Nelly Allen Gabueva, Nelly Gabutti<br><br>*Defendant(s)* | Case No. 3:20-mj-70917 MAG |

**FILED**
Jul 08 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 18, 2014 to July 17, 2017** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1341 | Mail Fraud |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Christopher Laska

☑ Continued on the attached sheet.

Approved as to form /s/ *Richard Ewenstein*
AUSA _Richard Ewenstein_

Sworn to ~~before me and signed in my presence~~ over the telephone per Rule 4.1.

Date: July 8, 2020

City and state: San Francisco, CA

/s/
*Complainant's signature*
CHRISTOPHER LASKA, SPECIAL AGENT, DHS
*Printed name and title*

*Judge's signature*

HON. THOMAS S. HIXON
*Printed name and title*
U.S. Magistrate Judge

# AFFIDAVIT
# IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

I, Christopher Laska, being duly sworn, hereby declare and state the following:

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant for Nelly Gabueva ("GABUEVA"), AKA: Nelly Allen, Nelly Allen Gabueva, and Nelly Gabutti. The facts set forth in this Affidavit are based on my training and experience, my own personal knowledge and investigation, the review of records and documents provided to me by United States Citizenship and Immigration Services (USCIS), and other records and information obtained throughout this investigation by myself and other law enforcement officers. I have reviewed various immigration records of USCIS and conducted HSI, USCIS, and public database searches. I have also reviewed interviews conducted by others during the investigation. Because this Affidavit is submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me that supports probable cause. Rather, I have set forth only the facts that I believe are necessary to support the criminal complaint and lawful arrest of GABUEVA.

## AFFIANT BACKGROUND

2. I have been employed as a Special Agent ("SA") with the Immigration and Naturalization Service ("INS") and its successor agency the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since 1997. At the time this investigation began, I was assigned to the HSI office in San Francisco, CA, where I investigated immigration fraud, document fraud, labor violations and other federal crimes. I am currently assigned to the ICE office, Office of Professional Responsibility, in Oakland, CA. I have completed various law enforcement training programs at the Federal Law Enforcement Training Centers in Brunswick, Georgia and Artesia, New Mexico.

3. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am authorized by the Homeland Security of Act of 2002 to perform the duties provided by law and regulation and am empowered to conduct investigations of offenses against the United States.

4. I have participated in numerous local and federal search warrants and arrests that involved immigration fraud. I am responsible for enforcing federal criminal statutes,

1

including violations of Titles 8, 18 and 21 of the United States Code. I have received training relating to federal criminal procedures and federal statutes and the law of search and seizure under the Fourth Amendment of the United States Constitution. I have participated in numerous immigration fraud, narcotics, and firearms investigations. Aside from formal academy training, I have attended and/or taken training courses during which I received further training in the laws and/or investigative techniques relating to immigration fraud, emerging drug trends, and internet-based investigations.

5. From September 2014 until the present time, I have been a member of the HSI San Francisco Document and Benefit Fraud Task Force (DBFTF), which is a multi-agency task force that investigates immigration fraud and counterfeit document cases. The DBFTF is comprised of HSI, U.S. State Department, U.S. Citizenship and Immigration Services, and other federal agencies.

6. The conclusions and opinions set forth below are based on my experience and training as an INS and HSI Special Agent, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this Affidavit, all sentences that begin with the words "I believe" are based upon this combination.

## APPLICABLE LAW

7. A violation of 18 United States Code § 1341 requires: (1) a person knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; (3) the person acted with the intent to defraud; and (4) the person used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

## BACKGROUND OF GABUEVA'S FRAUDULENT MAIL FRAUD SCHEME

8. Prior to March 17, 2008, GABUEVA submitted to USCIS several "Notice of Entry of Appearance as Attorney or Accredited Representative" G-28 forms, which were in the names of Nelly Gabueva and Nelly Allen. G-28 forms are filed with the DHS or the Executive Office of Immigration Review (EOIR) by attorneys or accredited representatives to document that they are legally representing the clients before DHS or EOIR. USCIS has an obligation to ensure that only those attorneys and representatives who are eligible to practice law before the agency are recognized in that manner.

9. Prior to March 17, 2008, on seven G-28 forms submitted in the name of Nelly Allen, GABUEVA checked block 4 "Others" and typed in the words "A Legal Document

        Assistant registered under the number # 38-000029 with City and County of San Francisco, and bonded to provide direct help to the public in their legal matters, without supervision of licensed attorney."

10.    The filing of a form G-28 constitutes "practice" before USCIS. *See* 8 C.F.R. § 1001.1(i) ("The term practice means the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the Service (USCIS), or any officer of the Service (USCIS) or the Board.")

11.    A "legal document assistant" operating without the supervision of a licensed attorney is not permitted to represent clients before USCIS. *See* 8 C.F.R. § 1292.1.

12.    On March 17, 2008, a USCIS Supervisory Intelligence Research Specialist working at the California Service Center in Laguna Niguel, CA notified numerous USCIS offices nationwide that GABUEVA was not an authorized legal representative for any proceedings concerning immigration matters and recommended those offices not to recognize GABUEVA as such.

13.    On March 18, 2008, GABUEVA was provided written notification by USCIS of her ineligibility to practice before USCIS. This notice was mailed by certified mail with return receipt to Nelly Allen, LDA Office, 655 Montgomery St., Suite 540, San Francisco, CA 94111. The return receipt label was mailed back to USCIS, which indicates that the notice was delivered. The notice informed GABUEVA that she was not eligible to represent applicants nor petitioners before USCIS as she was "neither an attorney, nor an accredited representative of an organization recognized and accredited by the Board of Immigration Appeals as defined in 8 C.F.R. §§ 103.2 and 292.1(a)(4)."

14.    From March 10, 2016 to August 6, 2018, GABUEVA submitted twenty-three "Notice of Entry of Appearance as Attorney or Accredited Representative" Forms G-28 to USCIS. On each Form G-28, GABUEVA checked the box that said: "I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court in the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in Part 6, Additional Information:" GABUEVA then provided the following information "Licensing Authority: NYCB, Bar Number: 1031567" NYCB, denotes the New York City Bar.

15.    The New York City Bar Association is a voluntary association of lawyers and law students. *See* https://www.nycbar.org/about (last visited May 18, 2020). One does not need to be an attorney to be a member. Nor is the New York City Bar Association a licensing body for attorneys. The attorney licensing body for attorneys in the State of

New York is the New York State Unified Court System (NYSUCS), Office of Court Administration.  *See* http://ww2.nycourts.gov/attorneys/registration/index.shtml (last visited May 18, 2020).

16. On October 27, 2017 USCIS Immigration Officer (IO) Catrin Lea was contacted by IO Alana Morel from USCIS, Newark Asylum Office. IO Morel had called the New York State Unified Court System and was informed that Nelly Allen Gabueva had never held an attorney license in New York State. NYSUC searched for GABUEVA via her name, aliases (Nelly Allen, Nelly Gabueva, and Nelly Allen GABUEVA) and her New York City Bar # 1031567.

17. On November 14, 2017, ICE – HSI San Francisco was referred information from USCIS - Fraud Detection and National Security - San Francisco Asylum Office describing that GABUEVA had been submitting Forms G-28 falsely attesting that she was an attorney licensed with the New York City Bar.

18. On November 29, 2017, USCIS sent GABUEVA another written notice of her ineligibility to practice before USCIS, which referenced the prior March 18, 2008 Notification. This notice was mailed by certified mail to Nelly Allen, 388 Market St., Suite 1300, San Francisco, CA 94111.  The notice stated, in pertinent part: "Only an attorney, or an accredited representative of an organization recognized and accredited by the Department of Justice as defined at 8 C.F.R. §§ 1.2, 103.2 and 292.1(a)(4), may represent individuals before the agency.  The regulations do not permit individuals who are neither attorneys, nor accredited representatives, to appear as representatives in application or petition proceedings filed with USCIS. **The regulations do not permit you to practice before USCIS and you were previously notified of your ineligibility in 2008.**" (emphasis in original).

19. On October 24, 2019, IO Lea contacted Celia Bressack at the New York City Bar (NYCB) to discuss GABUEVA. IO Lea requested that the NYCB search their records for any records showing that Nelly Gabueva, AKA Nelly Allen, was registered with the NYCB as an attorney. The NYCB searched their records, which stated that GABUEVA claimed to be an attorney in Georgia. No distinction was made between the state or country of Georgia. IO Lea also provided the NYCB member number 1031567, which was verified as a valid NY City State bar number registered to GABUEVA. NYCB numbers can be issued to non-attorneys, which is the case with GABUEVA.

20. On April 29, 2020, a judge of the Superior Court of California, San Francisco County, signed a permanent order to assume jurisdiction over the unauthorized law practice of GABUEVA.  This was the result of a State Bar of California inquiry relating to GABUEVA not being authorized to practice law in California.

21. The state of California has an attorney lookup tool, which is publicly available. On May 21, 2020, the following names were searched by IO Catrin Lea in the California State Bar (Attorney Search) website http://www.calbar.ca.gov/Attorneys; Nelly Allen, Nelly Gabueva, Nelly Allen Gabueva, Nelly Gabutti with no results.

22. NYSUCS also has an attorney lookup tool, which is publicly available. On May 21, 2020, the following names were searched by IO Catrin Lea in the New York State Unified Court system (Attorney search) website http://iapps.courts.state.ny.us/attorney/captcha; Nelly Allen, Nelly Gabueva, Nelly Allen Gabueva, Nelly Gabutti with no results.

### INTERVIEW OF "M.S."

23. A USCIS database search of GABUEVA's current and former clients identified an individual named "M.S."[1] GABUEVA previously filed a Form G-28 with USCIS stating that GABUEVA was an attorney registered with the New York Bar and was legally representing M.S.

24. On May 7, 2019, HSI Special Agent Julie McGuire and I interviewed M.S. at the HSI office in San Francisco, CA.

25. M.S told us that she entered the U.S. on May 27, 2016 on a B1B2 tourist visa and could only remain in the U.S. for six months on this status. She wanted to remain in the U.S. longer so started looking for an immigration attorney.

26. Around September 2016, M.S. was referred to GABUEVA by her roommate, "Sasha," last name unknown, who had been using GABUEVA for her own immigration paperwork.

27. Another of M.S.'s roommates, "M.B.," was also looking to hire an immigration attorney around the same time. M.S. and M.B. first met with GABUEVA at a coffee shop in the Russian Hill part of San Francisco and had their initial consultation to discuss their respective immigration situations. During this meeting, GABUEVA told M.S. and M.B. that she (GABUEVA) was a licensed immigration attorney. M.S. and M.B. paid GABUEVA $100 for this consultation.

28. Around December 2016, M.S. agreed to retain GABUEVA, who said the fees for filing a political asylum application with USCIS was $8,000. This included attending the political asylum interview with M.S. at the USCIS office. M.S. did not have $8,000 at that time

---

[1] I am aware of "M.S." true name, and the true names of all individuals identified by their initials in this affidavit. I have identified these individuals by their initials only in order to protect their privacy.

5

and told GABUEVA that she would pay GABUEVA when she got paid from her job. From January 2017 to the end of 2018, M.S. paid GABUEVA approximately $4,500.

29. M.S. told us that GABUEVA stated she was an attorney around one hundred times and said she was a lawyer in California who went to law school at Berkeley.

30. In April 2017, GABUEVA told M.S. to get medical exams done, which were required for her political asylum case. M.S. paid $450 for these exams, and when she took the results to GABUEVA, GABUEVA told her they were not necessary. M.S. said GABUEVA gave her incorrect advice and she (M.S.) wasted $450 dollars.

31. In May 2017, M.S. went to GABUEVA's office in San Francisco to discuss the filing of her political asylum case. M.S. heard that political asylum applications needed to be filed with USCIS within one year of the applicant entering the United States, but GABUEVA had not filed hers within that time period. GABUEVA also listed M.S.'s residence address as GABUEVA's office address in San Francisco, so mail from USCIS relating to M.S.' immigration applications was mailed to GABUEVA. M.S. believes that her political asylum case was filed after the one-year period as the receipt notice issued by USCIS was issued in June or July 2017, whereas she entered the U.S. in May 2016.

32. On July 17, 2017, GABUEVA mailed M.S.'s political asylum application to the USCIS office in Lincoln, Nebraska via the United States Postal Service. She included in the mail a G-28 form stating that GABUEVA is a licensed attorney in New York. A signature on the form purports to be GABUEVA's.

33. Around March 2018, M.S. went to GABUEVA's office in San Francisco to get copies of her immigration applications and payment receipts. GABUEVA previously gave her a few payment receipts, but none were signed, and there were a few payments for which she had no receipts at all. GABUEVA refused to provide M.S. with any copies of the immigration applications filed with USCIS. GABUEVA was angry at M.S. and threatened to get her deported if M.S. didn't pay the remaining money owed to GABUEVA. At the end of this meeting, M.S. grabbed a file containing copies of her immigration applications off GABUEVA's desk and left her office. GABUEVA was very upset at this and followed her to the office elevators arguing with her and demanding that M.S. return the file and pay her unpaid fees.

34. M.S. is unhappy with what she views as "bad advice" and "wrong advice" that GABUEVA provided when she was purporting to represent M.S. M.S. only agreed to hire GABUEVA because GABUEVA stated she was a licensed attorney. M.S.'s political asylum case is still pending with USCIS.

## INTERVIEW OF "I.R."

35. A USCIS database search of GABUEVA's current and former clients identified an individual named "I.R." GABUEVA previously filed a Form G-28 with USCIS stating that GABUEVA was an attorney registered with the New York Bar and was legally representing I.R.

36. On April 19, 2019, HSI Special Agent Julie McGuire and I interviewed I.R. at the HSI office in San Francisco, CA.

37. I.R. told us that he entered the U.S. on August 30, 2013 on a B1B2 tourist visa and could only remain in the U.S. for six months on this status. He wanted to remain in the U.S. longer so started looking for an immigration attorney.

38. Around October 2013, I.R. was referred to GABUEVA by his roommate, "E.T.," who had been using GABUEVA for his own employment-related paperwork.

39. I.R. first met with GABUEVA at her office located at 388 Market Street, San Francisco, CA, possibly on the 13th floor. This was their initial consultation to discuss I.R.'s immigration situation. GABUEVA told him that she was an attorney at this initial meeting. I.R. also met GABUEVA often to discuss his immigration applications at a coffee shop in the Richmond District of San Francisco near the intersection of Geary Blvd. and 18th Street.

40. Around October 2013, I.R. agreed to retain GABUEVA, who said the fees for filing a political asylum application with USCIS were $7,500. The money GABUEVA charged I.R. included attending the political asylum interview with I.R. at the USCIS office. I.R. first paid GABUEVA $3,500 by check when he retained her services and later paid her $4,000 in cash right before the asylum interview at the USCIS office. He also paid her approximately $300 on two occasions when she helped him file for work permits with USCIS. In total, I.R. paid GABUEVA approximately $8,100.

41. I.R. told us that GABUEVA stated she was an attorney a few times, and the asylum contract she gave him stated she was an attorney, but this contract was later stolen out of his car. I.R. stated that during the asylum interview at the USCIS office, he heard GABUEVA tell the receptionist in the waiting room and the officer that interviewed him that GABUEVA was an attorney from New York and New York attorneys don't have attorney ID (bar) cards. I.R. also recalls that at his asylum interview at the USCIS office, GABUEVA showed people a blue card that possibly said she was an attorney.

42. I.R. told us that GABUEVA often worked with her son, and I.R. believes that GABUEVA's son is possibly listed as his (I.R.'s) attorney on I.R.'s asylum application.

7

43. On February 18, 2014, GABUEVA mailed I.R.'s political asylum application to the USCIS office in Lincoln, Nebraska via the United States Postal Service. She included in this mailing a G-28 form stating that she is a licensed attorney in New York. A signature on the form purports to be GABUEVA's.

44. Sometime around 2015, I.R. had his asylum interview at the USCIS office in San Francisco, and GABUEVA attended this interview with him. His asylum case was denied at this time and his case was sent to the Immigration Court. He later retained another attorney to represent him in court, won his case, and is currently awaiting permanent resident status.

45. I.R. is unhappy with the representation that GABUEVA provided to him.

### **INTERVIEW OF "L.C."**

46. A USCIS database search of GABUEVA's current and former clients identified an individual named "L.C." GABUEVA previously filed a Form G-28 with USCIS stating that GABUEVA was an attorney registered with the New York Bar and was legally representing L.C.

47. On June 19, 2019, USCIS Immigration Officers (IO) Catrin Lea and Xiomara Flores interviewed L.C. and her son, "O.C.," at the USCIS office in San Francisco, CA.

48. L.C. told them that she entered the U.S. in October 2015 on a B1B2 tourist visa and could only remain in the U.S. for six months on this status. She wanted to remain in the U.S. longer so started looking for an immigration attorney.

49. Around late 2015, L.C.'s son, O.C., referred L.C. to GABUEVA. L.C. initially stated that she only knew GABUEVA by the name "Nelly" but when IOs Lea and Flores showed L.C. a copy of the G-28 with the name "Nelly Allen" written on it, L.C. stated that Nelly Allen was her attorney.

50. L.C. met with GABUEVA three or four times at GABUEVA's office located at 388 Market Street, San Francisco, CA. During at least one of these meetings, GABUEVA told L.C. that she (GABUEVA) was a licensed attorney.

51. In late 2015, L.C. and her son agreed to retain GABUEVA and her associate, "M.V.," to assist with L.C.'s political asylum case. GABUEVA and M.V. said the fees for filing a political asylum application with USCIS were $8,000, which also paid GABUEVA for attending the political asylum interview with L.C. at the USCIS office. O.C. stated he paid M.V. approximately $7,000 and that he never got a written contract from either GABUEVA or M.V.

52. On April 22, 2016, L.C.'s political asylum application was mailed to the USCIS office in Lincoln, Nebraska via the United States Postal Service. GABUEVA included in this mailing a G-28 stating that GABUEVA was a licensed attorney in New York. A signature on the form purports to be GABUEVA's.

53. On February 25, 2019, L.C. was scheduled to appear for her political asylum interview. O.C. stated that he was upset with M.V. and her firm because they did not file a request to reschedule this February 25, 2019 asylum interview. He wrote a request to reschedule notice and gave this to M.V. and asked that she file this with USCIS. M.V. did not file this with USCIS, and L.C. did not appear at the February 2019 interview. This failure to appear at the scheduled interview could have resulted in L.C. being denied asylum and a Notice to Appear in court issued to her. This did not happen, and L.C.'s political asylum case is still pending with USCIS.

## CONCLUSION

54. In summary, I have probable cause to believe GABUEVA knowingly and willfully committed mail fraud in violation of 18 United States Code § 1341.

/s/
CHRISTOPHER LASKA
Special Agent
Homeland Security Investigations
U.S. Department of Homeland Security

*Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P 4.1 and 4(d) on this* __8th__ *day of July 2020.*

HONORABLE THOMAS S. HIXON
United States Magistrate Judge

9